UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS BLOWERS, Personal
Representative of the Estate of Andrew
Charles Blowers,

    Plaintiff,

v.

CITY OF BATTLE CREEK, et al.,

    Defendants.
_____/

Case No. 1:21-cv-376

Hon. Hala Y. Jarbou

## OPINION

Plaintiff Thomas Blowers brought this action under 42 U.S.C. § 1983 and state law on behalf of the estate of Andrew Charles Blowers (hereinafter, "Blowers"). Plaintiff sues the following defendants: the City of Battle Creek; James Blocker, the Chief of Police for Battle Creek; Battle Creek Police Officers Patrick Herson and Steven Herbstreith; the Calhoun County Board of Commissioners; Steven Hinckley, Sheriff of Calhoun County; and Brandon Hatch, a deputy employed by Calhoun County. Before the Court are a motion for judgment on the pleadings by Officer Herson (ECF No. 59) and a motion for judgment on the pleadings by the Calhoun County Board of Commissioners, Deputy Hatch, and Sheriff Hinckley (ECF No. 62). The Court will grant these motions, dismissing the claims against these defendants.

### I. BACKGROUND

**A. Facts**

The Court discussed the allegations of Plaintiff's complaint, as well as video evidence discrediting those allegations, in detail in a previous opinion. (*See* 1/12/2022 Op., ECF No. 56.) The Court incorporates that discussion here. In short, Plaintiff's claims arise from the use of deadly force on Blowers by Hatch, Herson, and Herbstreith, following a high-speed car chase that ended

when Blowers lost control of his vehicle and spun out into a ditch at the side of a road. After these defendants parked their cruisers near Blowers's vehicle, they approached him with their revolvers drawn and demanded that he exit his vehicle. He did not comply. Instead, he accelerated out of the ditch in Herbstreith's direction, prompting Herbstreith to flee for cover behind his cruiser and the other officers to fire their weapons at Blowers. Blowers continued forward, driving into the front end of Herbstreith's cruiser and pushing it out of his way. He then drove down the street as officers continued to shoot at him. Some of those shots hit Blowers and he died from his wounds.

**B. Plaintiff's Claims**

Count I of the complaint, which is titled "Excessive Force," asserts a claim against Defendants Herson, Herbstreith, and Hatch under 42 U.S.C. § 1983. Plaintiff contends that these defendants deprived Blowers of his rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution by unlawfully seizing Blowers, using excessive force against him, depriving him of his life without due process, denying him equal protection of the law, and discriminating against him on the basis of a mental disability.

Count II asserts a claim under 42 U.S.C. § 1983 against Battle Creek, Chief Blocker, the Calhoun County Board of Commissioners, and Sheriff Hinckley. Plaintiff asserts that Battle Creek and the Board of Commissioners maintained a "custom, policy, and practice" that caused Blowers to be deprived of his constitutional rights. (Compl. ¶ 36, ECF No. 1.)

Count III asserts that Defendants Herson, Herbstreith, and Hatch committed assault and battery against Blowers.

Count IV asserts that Defendants Herson, Herbstreith, and Hatch were "grossly negligent" in the performance of their duties, giving rise to liability for all Defendants. (*Id.* ¶ 45.)

Count V asserts that the actions of Defendants Herson, Herbstreith, and Hatch constitute intentional infliction of emotional distress ("IIED"), for which all Defendants are liable.

**C. Procedural History**

Defendants Hatch, Blocker, and the City of Battle Creek moved for dismissal of the claims against them, and the Court granted their motion on January 12, 2022.

### 1. Count I: Excessive Force under § 1983 (Herbstreith)

In its January 12, 2022 Opinion, the Court concluded that Herbstreith was entitled to qualified immunity for Plaintiff's excessive force claim[1] in Count I because it was not clearly established that Herbstreith's alleged use of deadly force on Blowers was unreasonable.

> Blowers led [Herbstreith, Herson, and Hatch] on an eight-minute, high-speed car chase during which he passed multiple vehicles.  He stopped momentarily only because his reckless driving caused him to lose control of his vehicle and lodge it in a ditch.  And despite clear commands to get out of his vehicle, he accelerated toward where Herbstreith was standing, giving Herbstreith reason to believe that his own safety was at risk.  Then, after crashing into Herbstreith's cruiser, Blowers drove off under continued gunfire, apparently intent on resuming his flight and potentially putting others at risk.

(1/12/2022 Op. 17.)  In those circumstances, existing precedent did not put the "'constitutional question beyond debate,'" such that "'every reasonable official would have understood that what he is doing violates [the plaintiff's constitutional] right.'"  *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021) (quoting *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021)).

### 2. Count II: Excessive Force under § 1983 (Blocker, City of Battle Creek)

The Court dismissed the excessive force claim against Blocker in Count II because Plaintiff alleges no personal involvement by Blocker in the use of force on Blowers.  (1/12/2022 Op. 26.)

In addition, the Court dismissed the claim for municipal liability under § 1983 against the City of Battle Creek because the complaint alleges "no facts from which to infer that the City

---

[1] "Although Blowers mentions due process and discrimination in Count I of his complaint, the crux of his claim is based on the use of excessive force in violation of the Fourth Amendment. . . .  Indeed, there are no allegations supporting a claim for discrimination or for the deprivation of due process in violation of the Fifth and Fourteenth Amendments."  (1/12/2022 Op. 7 n.3.)

3

maintained a custom, policy, or practice of inadequate training and supervision" regarding interactions with "citizens with mental disabilities." (*Id.* at 28 (quoting Compl. ¶ 37).) "The allegations of inadequate training and supervision are wholly conclusory." (*Id.*) Also, there are no allegations suggesting a causal connection between such a policy or custom and Blowers's injury because the complaint does not allege "facts from which to infer that Defendants were aware that Blowers had a mental disability." (*Id.* at 29.) Thus, there is no reason to think that the lack of such training or supervision caused or was related to Blowers's injury.

### 3. Count III: Assault and Battery (Herbstreith)

The Court also concluded that Herbstreith was entitled to governmental immunity under Mich. Comp. Laws § 691.1407 for Plaintiff's claims for assault and battery in Count III because "the video evidence here provides indisputable support for a good-faith belief by Herbstreith that he and others were in danger." (1/12/2022 Op. 22.) The Court reasoned as follows:

> Although Herbstreith has not testified about his subjective perception of the need to use force to protect himself or others, those perceptions are clear from his actions in the video. Herbstreith followed Blowers on the high-speed car chase that ended with Blowers's vehicle in a ditch. As Herbstreith approached Blowers's car, it was surrounded by officers pointing their weapons at Blowers, telling him to get out of his vehicle. Herbstreith then had to flee from his position in order to avoid being run over by Blowers. Herbstreith narrowly escaped injury even though he was behind his cruiser when Blowers collided with it. Thus, Herbstreith fired on Blowers when it was clear to Herbstreith that Blowers would not stop for armed police and was willing to put others at risk in order to continue his escape. In these circumstances, Herbstreith is entitled to governmental immunity.

(*Id.*)

### 4. Count IV: Gross Negligence (Herbstreith, Blocker)

The Court dismissed Plaintiff's gross negligence claim against Herbstreith because "Plaintiff's allegations against Herbstreith are based on intentional conduct, not negligence." (*Id.* at 24.) Plaintiff agreed that Blocker was entitled to governmental immunity for this claim, so the Court also dismissed this claim against Blocker. (*Id.* at 27.)

4

### 5. Count V: IIED (Herbstreith, Blocker, City of Battle Creek)

The Court concluded that Herbstreith was entitled to governmental immunity for the IIED claim for the same reasons that he was entitled to that immunity for the assault and battery claims. (*Id.* at 24.)  And Plaintiff agreed that Blocker was entitled to governmental immunity for this claim. (*Id.* at 27.)  As for the City of Battle Creek, Defendants noted that Plaintiff failed to allege severe emotional distress by Blowers, a necessary element for an IIED claim.  (*Id.* at 30.)  Plaintiff did not respond to that issue, forfeiting his claim against the City.  (*Id.*)

### D. Defendants' Motion

Defendants Hatch, Herson, Hinckley, and the Calhoun County Board of Commissioners argue that they are entitled to judgment on the pleadings for many of the same reasons that the Court dismissed Defendants Herbstreith, Blocker, and the City of Battle Creek.

## II. REVIEW STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]"  Fed. R. Civ. P. 12(c).  Such a motion is reviewed under the "same general standards" as a motion under Rule 12(b)(6).  *Gavitt v. Born*, 835 F.3d 623, 639 (6th Cir. 2016).  In other words, "'all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Jackson v. Pro. Radiology, Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).  "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'"  *Id.* (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

At this stage, the Court's decision "rests primarily upon the allegations of the complaint[.]" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). But the Court can also consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion . . . , so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt*, 835 F.3d at 640. In addition, the Court can consider video evidence where it "'utterly discredits' the plaintiff's version of events." *Osberry v. Slusher*, 750 F. App'x 385, 390 (6th Cir. 2018) (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017)). In other words, "[i]f 'no reasonable jury could watch the video' and agree with the plaintiff, the video 'allows [the Court] to ignore the "visible fiction" in his complaint.'" *Id.* (quoting *Bailey*, 860 F.3d at 386). "In such a situation, the court should not rely on the allegations in the complaint, but should instead 'view[] the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

### III. ANALYSIS

#### A. Deputy Hatch, Officer Herson

##### 1. Count I: Excessive Force – § 1983

Like Herbstreith, Defendants Hatch and Herson contend that they are entitled to qualified immunity for their actions. The Court agrees. The primary difference between Herbstreith, Herson, and Hatch is their respective locations in relation to Blowers when the shooting started. Whereas Herbstreith was standing on the street near the front of Blowers's vehicle, Hatch and Herson were approaching it from the passenger side. (*See* Pl.'s Resp. Br. 3, ECF No. 72 ("Officers O'Connell and Herson and Deputy Hatch approached the stopped vehicle from the passenger side"); Compl. ¶ 19 (alleging that Herson and Hatch shot Blowers "through the passenger side window of his vehicle"); *see also* Hatch Bodycam Video at 08:15, ECF No. 33-3 (showing Officer

6

Herson pointing his revolver at Blowers's passenger-side window as Hatch approached it).) But this difference does not change the outcome of the qualified immunity analysis. Just as Herbstreith could use deadly force to protect himself, Hatch and Herson could use deadly force to protect Herbstreith. *See Gordon v. Bierenga*, 20 F.4th 1077, 1083 (6th Cir. 2021) ("Deadly force is justified against 'a driver who objectively appears ready to drive into an officer or bystander with his car.'") (quoting *Cass v. City of Dayton*, 770 F.3d 368, 375 (6th Cir. 2014)).

Plaintiff insists that the principle in *Gordon* does not apply because Defendants began shooting at Blowers before his vehicle began moving. The Court has reviewed the video evidence again and finds no support for that contention. As the Court discussed in its previous opinion, Hatch's bodycam video clearly shows Blowers's vehicle push over a small tree or bush before the first shot is heard. (*See* 1/12/2022 Op. 5 n.2.) Likewise, the dashcam video from O'Connell's cruiser shows the front end of Blowers's vehicle move into view of the camera before the sound of the first shot. (*See* O'Connell Dashcam Video at 10:03-04, ECF No. 33-1.) Plaintiff does not explain how any reasonable juror could interpret the video evidence differently.[2]

Plaintiff also contends that Hatch's bodycam video does not depict the location or actions of Herbstreith. To the contrary, several frames of that video clearly show Herbstreith standing in the street, at or near the spot where Blowers's vehicle passes through several seconds later. (*See* 1/12/2022 Op. 5 n.1.)[3] O'Connell's dashcam video shows the same. (*Cf.* O'Connell Dashcam Video at 10:01 (showing Herbstreith standing in the street) *with* O'Connell Dashcam Video at

---

[2] At any rate, Plaintiff's alternate version of the facts does little to advance his claim. He alleges that Blowers's vehicle was "momentarily stuck" in the ditch and that the officers "saw his rear tires rotate" before they began to shoot. (Compl. ¶¶ 17, 19.) In other words, the officers saw Blowers *attempting* to drive out of the ditch and shot him just before he did so. Even in those circumstances, it would have been apparent that Blowers was prepared to injure Herbstreith.

[3] To be sure, the bodycam footage is "jittery and grainy" (1/12/2022 Op. 5 n.1), but a frame-by-frame viewing reveals crucial details about Herbstreith's movements that might otherwise go unnoticed.

10:05 (showing Blowers's vehicle in the same location).) The latter also shows Herbstreith fleeing from Blowers's approaching vehicle. (*Id.* at 10:03.) From their respective positions, Hatch and Herson would have seen Herbstreith and reasonably believed that Blowers was ready to injure Herbstreith in order to evade arrest. In those circumstances, the law did not clearly establish that Defendants' use of deadly force was unreasonable.

To the extent Plaintiff contends that Hatch and Herson unreasonably fired upon Blowers as he drove his vehicle away from the impact with Herbstreith's cruiser, there is no significant difference between Plaintiff's claim against them and Plaintiff's claim against Herbstreith. Here, the Court considers whether "'the officer's prior interactions with the driver suggest that the driver will continue to endanger others with his car.'" (1/12/2002 Op. 12 (quoting *Cass*, 770 F.3d at 375).) Like Herbstreith, Hatch and Herson were aware of the high-speed car chase that ended with Blowers temporarily stuck in the ditch. Herson saw the chase firsthand because he was riding in a cruiser that followed Blowers. It is not clear whether Hatch saw the car chase, but his bodycam video demonstrates that he heard updates about Blowers's movements over the radio while driving to intercept him. And like Herson, he saw the end result of Blowers's reckless driving: a vehicle off the road in a ditch. Finally, Hatch and Herson would have seen Blowers accelerate toward Herbstreith, collide with Herbstreith's cruiser (spinning it out of the way and in Herbstreith's direction), and then drive off in an apparent attempt to continue his flight. Thus, like Herbstreith, they had ample reason to believe that "Blowers continued to pose a threat to [others] based on his actions toward Herbstreith and his actions during the police chase." (1/12/2022 Op. 19.)

As he did when responding to Herbstreith's motion to dismiss, Plaintiff relies upon *Latits v. Phillips*, 878 F.3d 541 (6th Cir. 2017), *Godawa v. Byrd*, 798 F.3d 465 (6th Cir. 2015), *Sigley v. City of Parma Heights*, 437 F.3d 527 (6th Cir. 2006), and *Hermiz v. City of Southfield*, 484 F.

App'x 13 (6th Cir. 2012) to argue that Hatch's and Herson's actions were unreasonable. The Court has already explained why those cases are distinguishable and do not squarely govern the facts at issue here. (*See* 1/12/2022 Op. 16-20.) That explanation applies to Hatch and Herson as well. Thus, they are entitled to qualified immunity for the § 1983 claim.

### 2. Count III: Assault and Battery

Hatch and Herson also argue that they are entitled to governmental immunity under Mich. Comp. Laws § 691.1407 for Plaintiff's assault and battery claims. That statute grants an affirmative defense of immunity to tort claims for governmental employees where the defendant-employee establishes that

> (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature.

*Odom v. Wayne Cnty.*, 760 N.W.2d 217, 218 (Mich. 2008).

Here, there is no question that the challenged actions by Hatch and Herson were undertaken within the scope of their employment and were discretionary, rather than ministerial, in nature. And they argue that their actions were taken in good faith because they witnessed most, if not all, of the same conduct by Blowers that Herbstreith observed before he allegedly used deadly force on Blowers. As discussed above, Herson saw the high-speed car chase where Blowers put other drivers at risk. And both Hatch and Herson would have seen Blowers threaten Herbstreith's safety while attempting to continue his flight from the police. These circumstances provided support for "a good-faith belief [by Hatch and Herson] that [they] were acting properly in using deadly force[.]" *Latits v. Phillips*, 826 N.W.2d 190, 194 (Mich. Ct. App. 2012).

Plaintiff responds to Defendants' motions by stating that "[c]ourts have found genuine issues of material fact whether the actions of the arresting officer—in executing an arrest or

9

participating in a pursuit—were objectively unreasonable." (Pl.'s Resp. Br., ECF No. 72, PageID.1045; ECF No. 73, PageID.1064.) That may be so, but it does not explain why the Court should not find that Hatch and Herson are entitled to governmental immunity.

Plaintiff also contends that Hatch's and Herson's actions were unreasonable because Officer Herbstreith was not in imminent danger when Hatch and Herson fired on Blowers, and because Blowers was not resisting arrest at the time. The video evidence refutes these assertions. Accordingly, Hatch and Herson are entitled to governmental immunity.

### 3. Count IV: Gross Negligence

The Court's reasons for dismissal of the gross negligence claim against Herbstreith apply to Hatch and Herson as well. In short, Plaintiff's allegations against Hatch and Herson are based on intentional conduct, not negligence. Accordingly, the Court will dismiss Count IV for failure to state a claim.

### 4. Count V: IIED

The Court's discussion of governmental immunity for the assault and battery claim applies with equal force to Plaintiff's IIED claim. Thus, the Court will dismiss that claim as well.

### 5. Attorneys' Fees and Costs - Mich. Comp. Laws § 600.2922b

Defendants argue that Hatch and Herson are entitled to their attorneys' fees and costs because they acted in self-defense. Michigan law provides that an "individual" using deadly force "in self-defense or in defense of another" is "immune from civil liability for damages" arising from the use of that force. Mich. Comp. Laws § 600.2922b. In addition, the individual sued for civil damages for the use of that force is entitled to "actual attorney fees and costs" "if the court determines that the individual used deadly force . . . in compliance with section 2 of the self-defense act and that the individual is immune from civil liability under section 2922b." Mich. Comp. Laws § 600.2922c (footnotes omitted).

10

Section 2 of Michigan's self-defense act permits the use of deadly force, "with no duty to retreat," by "[a]n individual who has not or is not engaged in the commission of a crime" when that individual

> honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Mich. Comp. Laws § 780.972.

Defendant Herbstreith made a similar request for attorney's fees and costs. In its previous opinion, the Court rejected Plaintiff's arguments that the self-defense statute does not apply to police officers or to civil actions. (*See* 1/12/2002 Op. 25.) However, the Court denied Herbstreith's request because his use of force is not conclusively established by the video evidence. Indeed, he was fleeing Blowers's vehicle and seeking cover behind his cruiser when officers began firing on Blowers. Consequently, the Court was not prepared to determine that Herbstreith actually used force in compliance with the self-defense act. (*Id.*)

In contrast, there is no dispute that Hatch and Herson fired upon Blowers when he was driving toward Herbstreith, putting Herbstreith at imminent risk of death or "great bodily harm." *See* Mich. Comp. Laws § 780.972. Hatch's bodycam shows him and Herson near the passenger side of Blowers's vehicle with their firearms pointed at Blowers when his vehicle begins to move and the first gunshots are heard. (Bodycam Video at 08:14-15.) The same video shows the glass on Blowers's front passenger window break as Hatch and Herson continue to shoot at him. (*Id.* at 08:16-17; *see* Compl. ¶ 19 (alleging that Defendants shot Blowers "through the passenger side window of his vehicle").) And an examiner performing an autopsy on Blowers identified gunshot wounds in his right chest, right back, right flank, right thigh, and left thigh, all of which had "right-

11

to-left" pathways. (Post-Mortem Exam. Rep., ECF No. 19-7, PageID.240-242.)[4] Those pathways are consistent with Hatch's and Herson's positions in relation to Blowers when they shot him. Thus, the record establishes that they used deadly force on Blowers and that they did so "to prevent the imminent death of or imminent great bodily harm to" Officer Herbstreith.

Plaintiff argues that Hatch and Herson were not acting in self-defense because they were not in harm's way. That argument is flawed because the statute also applies when an individual acts "in defense of another individual." Mich. Comp. Laws § 600.2922b.

Plaintiff also argues that there is no evidence that bullets fired by Hatch or Herson struck Blowers. But the statute applies to those who "use" deadly force. It does not require that such force be accurate. And more broadly, recovery of fees and expenses applies to those who are "sued for civil damages for *allegedly* using deadly force," which is the case here. *See* Mich. Comp. Laws § 600.2922c (emphasis added). Accordingly, Hatch and Herson are entitled to their attorneys' fees and costs in this matter.

### B. Sheriff Hinckley

#### 1. Count II: § 1983

Defendant Hinckley is entitled to dismissal for the same reasons as Defendant Blocker. In short, the complaint fails to allege facts that would implicate Hinckley in any constitutional violations. Although Hinckley is mentioned as a defendant in the heading of Count II of the complaint, all of the allegations in that count are directed at the City of Battle Creek and the Calhoun County Board of Commissioners. Those allegations are not sufficient to state a claim against Hinckley. The Court of Appeals "'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with

---

[4] The Court can consider this report because it is mentioned in Plaintiff's complaint. (Compl. ¶ 25.) Also, Plaintiff filed a copy of the report in response to Herbstreith's motion to dismiss, making it part of the record in the case.

particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (quoting *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011)).  Plaintiff has not met that low standard.  Thus, Plaintiff does not state a § 1983 claim against Hinckley.

### 2. Counts IV, V

Plaintiff acknowledges that Hinckley is entitled to "absolute immunity" for Counts IV and V.  (Pl.'s Resp. 10, ECF No. 73.)  Accordingly, the Court will dismiss Hinckley.

### C. Calhoun County Board of Commissioners

Plaintiff's allegations against the Calhoun County Board of Commissioners are identical to those against the City of Battle Creek.  Plaintiff does not state a claim against the Board of Commissioners for the same reasons that he does not state a claim against the City.

## IV. CONCLUSION

For the reasons stated, the Court will grant Defendants' motions.  The Court will dismiss Defendants Hatch, Herson, Hinckley, and the Calhoun County Board of Commissioners.  And the Court will grant Hatch's and Herson's requests for an award of their attorneys' fees and costs.

An order and judgment will enter consistent with this Opinion.

Dated:  July 13, 2022                               /s/ Hala Y. Jarbou
                                                                                     HALA Y. JARBOU
                                                                                     UNITED STATES DISTRICT JUDGE